**OLSHAN DEMOLISHING COMPANY, Appellant,**

v.

**ANGLETON INDEPENDENT SCHOOL DISTRICT, Appellee.**

**No. A14–84–240CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 20, 1984.

Ben A. Baring, Jr., DeLange, Hudspeth, Pitman & Katz, Houston, for appellant.

Mark H. Neal, Kee & Patterson, Angleton, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

### J. CURTISS BROWN, Chief Justice.

This is an appeal in a contract action from a judgment entered in favor of Angleton Independent School District (School District or Appellee) at the close of Olshan Demolishing Company's (Olshan or Appellant) evidence. Olshan argues the trial court erred in sustaining a motion for judgment (tantamount to an instructed verdict in a judge tried case) for the School District on both Olshan's attempt to compel arbitration between the parties and the breach of contract cause of action. We reverse and remand.

This suit arises out of a contract for the demolition of a two story building on a campus of the School District. The project was for the demolition and removal of the building, foundation, paving, and sidewalks. After the removal of these items, the site was to be regraded. Work on the project was not to start until May 29, 1982 and was to be completed by August 10, 1982. After bids were received by the School District, the contract was awarded to Olshan.

During the demolition work, on or about August 3, 1982, Olshan discovered three additional slabs underneath at least part of the building. These additional slabs were not shown on the architectural drawings upon which Olshan had based its bid. Representatives of Olshan testified that they had not known of the existence of these three additional slabs. A representative of Appellee knew there was more than one slab under the building but believed that he had so informed all of the contractors bidding on the project.

Appellant notified the School District's architect that the additional slabs had been encountered and requested additional payment for the work and materials which would be required to remove these slabs. The request for additional payment was rejected by Appellee. Prior to a written request for additional compensation, the three slabs were removed.

Pursuant to the contract between the parties, Appellant sought arbitration over the dispute of whether it was entitled to additional compensation for the removal of the three additional slabs. Appellee denied that the dispute was subject to arbitration. Unable to get this dispute arbitrated, Appellant filed suit seeking the District Court to compel Appellee into arbitration or, in the alternative, to award damages for breach of contract. The case was tried to the court sitting without a jury. After Olshan presented its evidence, the School District made an oral motion for judgment. The motion was granted.

Appellant timely and properly perfected appeal to this court. In its brief, Olshan raises two points of error attacking the trial court's action in granting judgment in favor of the School District.

■ In a non-jury case, when a defendant moves for judgment at the close of the plaintiff's case, the judgment rendered for the defendant is reviewed on appeal under

the same standard as when a trial court instructs a verdict in a jury trial. *McDaniel v. Carruth*, 637 S.W.2d 498, 504 (Tex. App.—Corpus Christi 1982, no writ); *Plumb v. Stuessy*, 603 S.W.2d 351, 354 (Tex.Civ.App.—Austin 1980), rev'd on other grounds, 617 S.W.2d 667 (Tex.1981); *City of College Station v. Seaback*, 594 S.W.2d 772, 777 (Tex.Civ.App.—Waco 1979, no writ); *Eikel v. Bristow Corp.*, 529 S.W.2d 795, 797 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). This court may consider only the evidence and inferences which tend to support the plaintiff's case. The judgment of the trial court will be affirmed if there is no evidence supporting one or more elements of the plaintiff's case. *McDaniel*, 637 S.W.2d at 504; *City of College Station*, 594 S.W.2d at 777.

■ Point of error one is that the trial court erred in granting judgment in favor of the School District because Olshan was entitled to arbitration as a matter of law or there was sufficient evidence raising an issue of whether Olshan was entitled to arbitration. Documents which were incorporated into the contract do provide for arbitration of disputes. Appellant concedes that arbitration under the Texas General Arbitration Act is not available due to the failure of the contract to have the required notice that the contract is subject to arbitration. TEX.REV.CIV.STAT.ANN. art. 224-1 (Vernon Supp.1984). Olshan argues that it has a Common Law right to have this dispute arbitrated which is independent of the Texas General Arbitration Act. The School District responds that Olshan is not entitled to arbitration for two reasons: 1) Appellant has waived arbitration by failing to comply with the requirements of the contract; and 2) the agreement to arbitrate has been revoked.

■ The Supreme Court has determined that a common law right to arbitration exists which is an alternative to the statutory method. *See L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348 (Tex.1977). Whether Olshan is entitled to that common law right depends on whether that right has been waived and whether there has been a valid revocation of the agreement providing for arbitration.

■ The School District argues that Olshan waived its right to arbitration by failing to comply with the contract. Appellee contends that paragraph 4.2.2 of the Supplemental Conditions to the contract has not been complied with. That provision provides:

> After reporting to the Architect any error, inconsistency, or omission he may discover in the Contract Documents, the Contractor shall not proceed with any Work affected without obtaining specific written instructions from the Architect.

We are unable to agree that that provision precludes Olshan's claim.

We believe that paragraph 4.2.2 must be read in conjunction with paragraph 4.2.1 of the General Conditions to the contract. Paragraph 4.2.1 provides:

> The Contractor shall carefully study and compare the Contract Documents and shall at once report to the Architect any error, inconsistency or omission he may discover. The Contractor shall not be liable to the Owner or the Architect for any damage resulting from any such errors, inconsistencies or omissions in the Contract Documents. The Contractor shall perform no portion of the Work at any time without Contract Documents or, where required, approved Shop Drawings, Product Data or Samples for such portion of the Work.

As we read these two provisions, they apply to errors, inconsistencies, and omissions in the Contract Documents which are unknown to the Contractor, Owner and Architect. It would make no sense for the Contractor to give notice to the Architect and wait for written instructions from the Architect because of an omission in the Contract Documents if both the Owner and Architect knew of the condition in question.

The existence of three additional slabs was not an error, inconsistency, or omission in the Contract Documents which was unknown to the School District and the Architect. A representative of Appellee

informed other contractors bidding on the job of the existence of these additional slabs. Because the existence of the slabs was not unknown to the Architect and Appellee, paragraph 4.2.2 does not apply and does not preclude Olshan's claim.

Appellee also argues that under paragraph 12.3.1 of the General Conditions of the contract, Olshan was required to give written notice to the Architect before executing the work if Olshan wished to make a claim for an increase in the contract sum. Paragraph 12.3.1 entitled "Claims For Additional Cost" provides:

> If the Contractor wishes to make a claim for an increase in the Contract Sum, he shall give the Architect written notice hereof within twenty days after the occurrence of the event giving rise to such claim. *This notice shall be given by the Contractor before proceeding to execute the Work*, except in an emergency endangering life or property in which case the Contractor shall proceed in accordance with Paragraph 10.3. *No such claim shall be valid unless so made.* If the Owner and the Contractor cannot agree on the amount of the adjustment in the Contract Sum, it shall be determined by the Architect. Any change in the Contract Sum resulting from such claim shall be authorized by Change Order. (emphasis added).

Appellee argues that Olshan did not give notice prior to removing the slabs and the claim is invalid under the contract itself.

Olshan argues that paragraph 12.3.1 is inapplicable and that the controlling contractual provision is paragraph 12.2.1 entitled "Concealed Conditions" which provides:

> Should concealed conditions encountered in the performance of the Work below the surface of the ground or should concealed or unknown conditions in an existing structure be at variance with the conditions indicated by the Contract Documents, or should unknown physical conditions below the surface of the ground or should concealed or unknown conditions in an existing structure of an un-

usual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the Contract, be encountered the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within twenty days after the first observance of the conditions.

Appellant contends that this provision more specifically deals with this situation.

■■■ As a general rule, contracts will not be construed so as to render some of their terms meaningless. *Blaylock v. American Guarantee Bank Liability Insurance Co.*, 632 S.W.2d 719, 722 (Tex. 1982). If this contract were to be construed as Appellee argues, there would be no need for the contract to contain the "Concealed Conditions" provision and an express term of the contract would be rendered meaningless. We believe that the contracting parties intended that a "Concealed Condition" was to be treated differently than a "Claim for Additional Costs." Under these circumstances, the provision on concealed conditions is controlling and the Appellant was not required to follow the notice requirements of paragraph 12.3.-1.

The School District does not dispute the testimony of the three witnesses for Olshan who testified that the existence of the three additional slabs was a condition that differed materially from those usually encountered in the demolition of a building like this. The School District also does not dispute that Olshan made a claim, within twenty days, that the Contract be equitably adjusted by a Change Order. Appellant has procedurally followed the requirements of the controlling contractual provision and has not waived its right to have this dispute arbitrated.

The School District also argues that it has revoked the agreement to arbitrate the dispute. The District argues that an executory agreement to arbitrate future disputes is not specifically enforceable and either party may revoke at any time before arbitration results in an award. *See With-*

ers—*Busby Group v. Surety Industries, Inc.*, 538 S.W.2d 198 (Tex.Civ.App.—Dallas 1976, no writ); *Deep South Oil Co. of Texas v. Texas Gas Corp.*, 328 S.W.2d 897 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.). In fact, this court has previously stated that "an agreement to submit a matter to arbitration may be revoked by either party to that agreement at any time before the award is made." *Carpenter v. North River Insurance Co.*, 436 S.W.2d 549, 551 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The record in this case establishes that the School District revoked the agreement to arbitrate.

In response, Olshan directs this court to *L.H. Lacy Co. v. City of Lubbock*. In that case, as stated above, the Texas Supreme Court reaffirmed the existence of a common law right to arbitration, separate and distinct from any statutory right. That opinion also discussed the enforceability of agreements to arbitrate future disputes. Chief Justice Greenhill, writing for the court, stated that "courts have refused specific enforcement to agreements to arbitrate *future* disputes (emphasis in original)." *L.H. Lacy Co.*, 559 S.W.2d at 352. However, the opinion continued by arguing that this doctrine was developed in a time when lengthy dockets and court congestion was not a problem as it is today. Judge Greenhill emphasized that allowing disputes to be arbitrated would help in alleviating the burden on the courts and would allow greater efficiency in the handling of disputes. Although it did not so hold, the opinion states that "the policy of refusing specific enforcement to executory arbitration agreements is not justifiable when the case fits within the common mold." *Id.*

■ We find the reasoning of the *L.H. Lacy Co.* opinion to be sound. By enforcing these agreements to arbitrate, disputes will be resolved faster and more efficiently by arbitrators who have knowledge of the general conditions of the dispute. Encouraging arbitration will reduce some of the backlog in our trial courts. We recognize that Chief Justice Greenhill's discussion on this point was dicta, however, even dicta in

a Supreme Court opinion is persuasive to an appellate court. We hold that a party to an agreement to arbitrate future disputes may obtain specific enforcement of that agreement despite the attempted revocation of the arbitration agreement by another party to that agreement.

■ Because Olshan has not waived its right to arbitration under the contract and the agreement may be specifically enforced despite the District's attempted revocation, the trial court erred in rendering judgment for the School District on the arbitration claim at the end of Olshan's evidence. Point of error one is sustained.

■ Olshan's second point of error is that the trial court erred in granting judgment for the School District because there was sufficient evidence raising a fact issue on whether the District breached the contract by failing to pay for the additional work performed by Olshan. Olshan presented the testimony of three witnesses that the additional slabs were "concealed conditions." The School District responds that the Architect conclusively found that there was no "concealed condition" and that decision is binding.

Appellee relies on paragraphs 2.2.7 and 2.2.8 of the contract which provide that the Architect is the interpreter of the requirements of the Contract Documents and the Architect shall render such interpretations. The Architect did decide that the additional slabs were not a "concealed condition." The School District relies on case law that a decision of the Architect is final, conclusive, and binding on the parties. *See Austin Bridge Co. v. Teague*, 137 Tex. 119, 152 S.W.2d 1091 (1941); *City of San Antonio v. McKenzie Construction Co.*, 136 Tex. 315, 150 S.W.2d 989 (1941).

If the contract did not provide the effect to be given the Architect's decision, Appellee's argument would be more persuasive. However, the contract does provide the effect to be given such determinations. Paragraph 2.2.11 of the contract does provide that the Architect's decisions shall be final "in matters relating to artistic ef-

fect...." The next paragraph of the contract provides that "any claim, dispute or other matter in question between the Contractor and the Owner referred to the Architect, except those relating to Artistic effect ... shall be subject to arbitration upon the written demand of either party." From the contract itself, the decisions of the Architect were not to be given final effect in non-artistic matters.

Appellee also argues that Olshan forfeited its claim by failing to comply with the notice requirements of paragraph 12.3.1 of the contract. As stated above, this situation is controlled by paragraph 12.2.1 and not paragraph 12.3.1. In addition, there is evidence that Olshan did comply with the requirements of paragraph 12.2.1. Because Olshan presented some evidence that there was a concealed condition and that paragraph 12.2.1 was complied with, the trial court erred in rendering judgment for the School District on the breach of contract claim. Point of error two is sustained.

■ The School District also argues that it is constitutionally prohibited from paying Olshan any amount in excess of the agreed and authorized contract sum. *See* TEX.CONST. art. III, § 53. Because the contract provided that the contract sum shall be equitably adjusted if a "concealed condition" was encountered, any such change would be pursuant to the contract and not in excess of the contract sum. An increase that was pursuant to the contract would not be constitutionally prohibited.

The judgment of the trial court is reversed and remanded.