**HOUSTON LIGHTING & POWER COMPANY, Appellant**

v.

**CITY OF SAN ANTONIO, Appellee.**

**HOUSTON LIGHTING & POWER COMPANY, Relator**

v.

**The Honorable Harriet O'NEILL, Respondent.**

Nos. 01–94–01092–CV, 01–94–01135–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 23, 1995.

Rehearing Overruled April 13, 1995.

David J. Beck, J. Gregory Copeland, Houston, and Robert J. Hearon, Jr. and Roy Q. Minton, Austin, for appellant.

Jon C. Wood, Howard P. Newton, Charles J. Fitzpatrick, Merritt M. Clements, San Antonio, Thomas J. Heiden, Grand Rapids, MI, Lori Meghan Gallagher, Houston, Mike A. Hatchell, Tyler, and Peter W. Waldmeir, Detroit, MI, for appellee.

Before OLIVER–PARROTT, C.J., and ANDELL and HEDGES, JJ.

## OPINION

ANDELL, Justice.

In an interlocutory appeal and a mandamus action, Houston Lighting and Power attacks the trial court's denial of its motion to compel arbitration. In the mandamus proceeding, it also challenges the court's denial of its motion to strike an intervention. We affirm the trial court in the interlocutory appeal and overrule the motion for leave to file in the mandamus action.

### Facts and Procedural History

In 1973, Houston Lighting and Power (HL & P), Central Power and Light Company (CP & L), and the City of San Antonio signed a document styled "Participation Agreement," in which they agreed to license, construct, operate, and maintain a jointly-owned, nuclear-powered electric generation plant known as the South Texas Project. Later in 1973, the City of Austin joined the Participation Agreement. Thus, there are four "participants": HL & P, CP & L, San Antonio, and Austin.[1]

Under the agreement, HL & P is the project manager and operator of the plant (with the exception of certain duties not relevant here). The participants each own a percentage of the project and provide funds for its operation in proportion to their interest. San Antonio and Austin also have the right to obtain electricity generated at the plant for the use of their residents. The Participation Agreement contains an arbitration clause, which states in relevant part as follows:

> 23.1 If a dispute [other than one regarding a Management Committee decision] between any of the Participants should arise under this Participation Agreement or the Project Agreements, any Participant may call for submission of the dispute to arbitration, which call shall be binding upon all other Participants....

> 23.2 ... The decision of a majority of the arbitrators so appointed shall be binding on all Participants, and all the Participants hereby consent to the entry of a judgment in any court of competent jurisdiction confirming and implementing the decision of the arbitrators....

During the early 1980s, a dispute over the plant's construction arose between the participants. In 1992, as part of the settlement process, HL & P and CP & L entered into an agreement which stated that, with exceptions not relevant here, HL & P will not call CP & L "to arbitration provided for in the Participation Agreement" of future disputes "with respect to the South Texas Project and the Participation Agreement...."

In 1993, the plant's two generating units stopped operating. The units stayed inoperative for approximately 14 months. As a

---

1. The Participation Agreement defines "participant" as "[a] party hereto or other entity acquiring an interest in the South Texas Generating Station in accordance with this Participation Agreement."

369

result, San Antonio and Austin were forced to find alternative sources of electricity.

In 1994, Austin sued HL & P, alleging that HL & P had mishandled the operation and maintenance of the project. Among other relief, Austin asked for a declaratory judgment that would "declare void the arbitration clause in the Participation Agreement."

Later in 1994, San Antonio intervened in the lawsuit as a party-plaintiff. San Antonio made the same factual allegations, asserted most of the same causes of action, and sought most of the same relief as Austin. San Antonio sought a declaratory judgment that (1) "provisions of the Participation Agreement purporting to limit HL & P's liability are unenforceable," and (2) HL & P may not utilize the Participation Agreement's arbitration provisions.

HL & P called for arbitration with San Antonio, asked the trial court to strike San Antonio's intervention, and moved to compel arbitration with San Antonio. After a hearing on these issues, the trial court denied all the relief HL & P sought.

HL & P contends that both the Texas General Arbitration Act, Tex.Rev.Civ.Stat. Ann. art. 224 et seq. (Vernon 1973 and Supp. 1995), and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1988), provide authority for arbitration in this case. To attack the trial court's denial of its motion to compel arbitration under the Texas act, HL & P brings an appeal. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex.1992) (holding that a litigant "who allege[s] entitlement to arbitration ... under the Texas Act" must pursue an interlocutory appeal of the trial court's denial of its application to compel arbitration). Article 238–2(A)(1), which states that an appeal may be taken from an "order denying an application to compel arbitration made under Section A of Article 225,"

authorizes such an appeal. Tex.Rev.Civ. Stat.Ann. art. 238–2(A)(1) (Vernon 1973).[2]

■ The appeal from the trial court's denial of the motion to compel arbitration is an appeal from an interlocutory order. Central Nat'l Ins. Co. v. Glover, 856 S.W.2d 490, 491 (Tex.App.—Houston [1st Dist.] 1993, no writ) (per curiam); USX Corp. v. West, 759 S.W.2d 764, 765 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding); NCR Corp. v. Mr. Penguin Tuxedo Rental & Sales, Inc., 663 S.W.2d 107 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). Thus, the appeal is accelerated. Tex.R.App.P. 42(a)(1).

To challenge the trial court's denial of its motion to compel arbitration under the federal act, HL & P brings a mandamus proceeding. See Jack B. Anglin Co., 842 S.W.2d at 272 (holding that a litigant "who allege[s] entitlement to arbitration under the Federal Act" must pursue a writ of mandamus in order to attack the trial court's denial of its application to compel arbitration). Its mandamus action also attacks the trial court's denial of its motion to strike San Antonio's intervention.

In a single order, we granted HL & P's motion for leave to file petition for writ of mandamus and ordered that we would hear and consider the interlocutory appeal and the mandamus action together.

## Is HL & P Entitled to Arbitration?

Article 224 states that a contract provision mandating that the parties to the contract shall submit a controversy between them to arbitration is "valid, enforceable, and irrevocable," unless grounds exist for the contract's revocation. Tex.Rev.Civ.Stat.Ann. art. 224 (Vernon Supp.1995).[3] The federal act states in relevant part that:

2. Section A of article 225 states that, on the application of a party that shows (1) a valid article 224 arbitration agreement, and (2) that the other side has refused to arbitrate on the ground that it "denies the existence of the agreement to arbitrate," the court must determine whether there is an agreement. Tex.Rev.Civ.Stat. Ann. art. 225(A) (Vernon 1973). HL & P made its motion to compel arbitration pursuant to this section. The agreement is a valid article 224 arbitration agreement. See Tex.Rev.Civ.Stat.Ann.

art. 224 (Vernon Supp.1995). San Antonio declined to arbitrate in part because it denied the existence of the agreement to arbitrate, contending that HL & P had in effect voided the agreement and alternatively that HL & P had waived its right to arbitration.

3. We consider article 224 as it read at the time HL & P called for arbitration in 1994.

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. § 2 (1988).

In its sole point of error on appeal, HL & P argues that the trial court erred in denying its motion to compel arbitration under the Texas act. In its mandamus proceeding, HL & P contends that the trial court erred in denying its motion to compel arbitration under the federal act. San Antonio asserts that HL & P waived its right to arbitration under both acts. For reasons to follow, we agree with San Antonio.

■ The initial issue presented by a motion to compel arbitration is whether there is an agreement to arbitrate. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *Capital Income Properties v. Blackmon*, 843 S.W.2d 22, 23 (Tex.1992). There is no doubt that there is an agreement to arbitrate here; however, a party can waive a contractual right to arbitrate. *Central Nat'l Ins. Co. v. Lerner*, 856 S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) (per curiam); *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 592 (Tex.App.—Dallas 1991, writ dism'd w.o.j.); *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986). The waiver can be express or by implication. *Transwestern Pipeline*, 809 S.W.2d at 592; *Star Hill Co. v. Johnson Controls, Inc.*, 673 S.W.2d 282, 283 (Tex. App.—Beaumont 1984, no writ); *Compuserve, Inc. v. Vigny Int'l Fin. Ltd.*, 760 F.Supp. 1273, 1279 n. 2 (S.D. Ohio 1990).

■ For a party to waive the right to arbitration, that party must take action inconsistent with its right to arbitration, and the party claiming waiver must be preju-

diced. *Psarianos v. Standard Marine, Ltd.*, 728 F.Supp. 438, 449 (E.D.Tex.1989); *see D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 230 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.). Some cases hold that a party must demonstrate prejudice to show waiver of the right to arbitration; other cases hold that proof of prejudice is not required. *Compare E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir.1977) ("[P]rejudice ... is the essence of waiver."), *with National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 777 (D.C.Cir. 1987) ("[W]aiver may be found absent a showing of prejudice."). We favor the prejudice requirement, which the Fifth Circuit restated in *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 66 (5th Cir.1987).

■ Whether a party has waived its right to compel arbitration is a question of law. *Lerner*, 856 S.W.2d at 494; *Transwestern Pipeline*, 809 S.W.2d at 592; *Price*, 791 F.2d at 1159. There is a presumption against the waiver of a contractual right to arbitration. *Lerner*, 856 S.W.2d at 494; *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir.1991). Nevertheless, under "appropriate circumstances," courts will find waiver. *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir.1986); *see, e.g., Star Hill*, 673 S.W.2d at 284; *Price*, 791 F.2d at 1163.

## A. Did HL & P act inconsistently with its right to arbitration?

■ Section 23.1 of the Participation Agreement states that a participant may call for the submission of a "dispute" to arbitration. The "dispute" between San Antonio and HL & P includes San Antonio's assertions that (1) the provisions of the Participation Agreement which limit HL & P's liability are unenforceable, and (2) HL & P may not invoke the Participation Agreement's arbitration provisions. The first assertion brings into issue HL & P's contractual right to limit its liability, a right which, if enforceable, means that *none* of the participants can reach HL & P beyond those limits. Should San Antonio succeed in its attempt to have these provisions declared unenforcea-

ble, HL & P's right to limit its liability in a claim brought by *any* of the participants—not just San Antonio—will be abolished. Thus, this is a dispute in which *all four participants,* not just San Antonio and HL & P, have an interest.

The second assertion is of the same nature. It brings into issue HL & P's right to invoke arbitration, not just with San Antonio, but with *any* of the participants. If San Antonio obtains a declaratory judgment stating that HL & P is not entitled to call for arbitration, HL & P will no longer be able to call *any* of the other participants to arbitration. Therefore, this, too, is a dispute in which *all four participants* have an interest.

HL & P, however, cannot call one of the other three participants to arbitration of these issues; under the terms of its 1992 settlement agreement with CP & L, HL & P has forgone its right to call CP & L to arbitration.[4] Yet section 23.2 states that *all* the participants shall be bound by the decision of the arbitrators. This section clearly intends that whichever participants have an interest in the dispute participate in the arbitration of that dispute. Any other construction of section 23.2 would mean that a participant with an interest in a dispute would be bound by the decision of the arbitrators who decided the dispute, even if the participant did not participate in the arbitration because it had no duty or opportunity to do so. We would not favor a construction under which the rights of one of the parties to the contract could be determined even in that party's rightful absence from the arbitration proceeding.

Because HL & P forsook its right to call CP & L to arbitration of these issues, HL & P cannot force CP & L to participate in the arbitration that HL & P seeks.[5] Thus, the clear intent of section 23.2 is thwarted; *all* of the participants could not be bound by the results of the arbitration, because one of them, CP & L, cannot be compelled to participate in the arbitration in the first place.[6] HL & P's act of forgoing its right to call CP

& L to arbitration was an act inconsistent with its right to arbitrate these issues.

## B. Did HL & P's act prejudice San Antonio?

At one time, HL & P would have had the right to call all the other participants to arbitration of San Antonio's claims for declaratory relief. However, HL & P renounced its right to call CP & L to arbitration. Because of this renunciation, San Antonio would be prejudiced if we compelled it to arbitrate its claims for declaratory relief under HL & P's call. If San Antonio is forced to arbitrate those claims under HL & P's call, i.e., without CP & L present, San Antonio will face an arbitration the results of which would not be enforceable against CP & L. Because of the lack of enforceability against CP & L, such an arbitration would be in large part, if not entirely, futile.

Further, the arbitration would likely lead to still more litigation; if CP & L was unhappy with the results of the arbitration, it could proceed to the courts to attack the enforceability of the decision. Arbitration is designed to *avoid* recourse to the courts, not promote it; it should not be the cause of additional litigation. *City of Alamo v. Garcia,* 878 S.W.2d 664, 666 (Tex.App.—Corpus Christi 1994, no writ); *E.C. Ernst, Inc.,* 559 F.2d at 269.

HL & P's acts inconsistent with its right to arbitration prejudiced San Antonio.

## C. The policy favoring arbitration

▆▆▆▆ HL & P argues that, if we deny it relief, we will run afoul of the national and state policies favoring arbitration. There is indeed a strong federal policy favoring arbitration. *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985); *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Longoria,* 783 S.W.2d 229, 230 (Tex.App.—Corpus Christi 1989, orig. proceeding). Texas public policy

---

**4.** CP & L has indicated no intent to disregard the 1992 agreement and arbitrate anyway.

**5.** *See* footnote 4, *supra.*

**6.** *See* footnote 4, *supra.*

also favors arbitration. *Jack B. Anglin Co.*, 842 S.W.2d at 268; *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.*, 849 S.W.2d 380, 386 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

However, "[t]he Supreme Court has made clear that the 'strong federal policy in favor of enforcing arbitration agreements' is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism." *National Found. for Cancer Research*, 821 F.2d at 774 (citing *Byrd*, 470 U.S. at 218–24, 105 S.Ct. at 1241–44). Thus, the issue of whether a party has waived a contractual right to arbitration should be analyzed much like the alleged waiver of any other contractual right. *National Found. for Cancer Research*, 821 F.2d at 774. If there is ambiguity as to the *scope* of the waiver, we are to resolve the issue in favor of arbitration. *Id.* However, where, as here, the only issue is whether there has been a waiver, we are to treat the issue as an ordinary waiver-of-a-contractual-right question. *Id.* at 774, 775. The policy favoring arbitration, while weighty, does not require us to ignore the waiver of a contractual right to arbitrate. *See id.* at 775.

### D. Conclusion regarding arbitration

HL & P waived its right to call for arbitration of this dispute. A party waives its right to call for arbitration of a dispute where the arbitration clause intends that all the parties to the contract arbitrate that particular dispute and the party has forgone its right to call one of the other parties, who does not otherwise intend to arbitrate, to arbitration.

The trial court did not err in denying HL & P's motion to compel arbitration under the Texas act. We therefore overrule HL & P's point of error.

The trial court did not abuse its discretion in denying HL & P's motion to compel arbitration under the federal act. Thus, HL & P is not entitled to mandamus relief on this issue. *See Lerner*, 856 S.W.2d at 495.

### Did the Trial Court Abuse Its Discretion in Not Striking San Antonio's Intervention?

Under Texas Rule of Civil Procedure 60, an entity has the right to intervene if it could have brought the same action, or any part thereof, in its own name, or, if the action was brought against it, it would be able to defeat recovery in whole or in part. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990); *Inter-Continental Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). The interest asserted by the intervenor may be legal or equitable. *Guaranty*, 793 S.W.2d at 657; *Moody*, 411 S.W.2d at 589.

The trial court has broad discretion in determining whether an intervention should be struck. *Guaranty*, 793 S.W.2d at 657; *Moody*, 411 S.W.2d at 589. Striking a plea in intervention is an abuse of discretion if (1) the intervenor meets the test set out above for the right to intervene, (2) the intervention will not complicate the case by excessively multiplying the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Guaranty*, 793 S.W.2d at 657; *Moody*, 411 S.W.2d at 589.

San Antonio meets the first requirement. Under rule 60, it had the right to intervene, because it could have brought in its own name the same action, or any part thereof, brought by Austin. *See Texas Supply Center, Inc. v. Daon Corp.*, 641 S.W.2d 335, 337 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *compare Rogers v. Searle*, 533 S.W.2d 440, 443, 444 (Tex.Civ.App.—Corpus Christi 1976, no writ) (holding that, where appellant had no parental rights to child at time appellant filed petition in intervention, trial court was correct in granting motion to strike petition in intervention).

San Antonio also meets the second requirement. It asserted most of the same causes of action, made the same factual allegations, and sought most of the same relief as Austin. San Antonio's intervention will not complicate the lawsuit by excessively multiplying the issues.

**373**

San Antonio meets the third requirement, as well. Austin's lawsuit in part seeks declaratory relief, asking the trial court to construe certain clauses of the Participation Agreement and to determine the participants' rights and responsibilities under the Agreement. Therefore, because it, too, is a participant, San Antonio's intervention is essential to protect its interests.

The trial court acted correctly in denying HL & P's motion to strike San Antonio's intervention. Because the trial court did not abuse its discretion in denying the motion to strike, HL & P is not entitled to mandamus relief on this issue. *See Scrivner v. Hobson*, 854 S.W.2d 148, 150 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding) (stating rule that relator is not entitled to mandamus relief unless it shows clear abuse of discretion).

### Conclusion

In HL & P's appeal, we affirm the judgment of the trial court. In HL & P's mandamus proceeding, we withdraw our order granting HL & P's motion for leave to file petition for writ of mandamus. The motion was improvidently granted. We hereby overrule the motion.